# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

United States of America,

                Plaintiff,

v.

Terrell Demetrious Malone, Jr.,

                Defendant.

Crim. No. 21-217 (SRN/BRT)

**REPORT AND
RECOMMENDATION**

---

Thomas Calhoun-Lopez, Esq., United States Attorney's Office, counsel for Plaintiff.

Michael J. Millios, Esq., CJA, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

On October 12, 2021, Defendant Terrell Demetrious Malone, Jr. was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (Doc. No. 7, Indictment.) This case is before the Court on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure. (Doc. No. 26.) The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The Court held a motion hearing on January 13, 2022, and three exhibits—the three search warrants at issue—were received into evidence. (*See* Doc. Nos. 37, 38.) For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

On September 22, 2021, St. Paul police officer Robert Lockhorst obtained a search warrant to search the following described premises: "[XXXX] West 32nd Street, Apartment [XXX]." (Doc. No. 38, 1/13/21 Hr'g Ex. List, Hr'g Ex. 1.) The warrant allowed for a search for the following property and things:

- firearms; including but not limited to handguns and long guns, shotguns, rifles, revolvers;

- ammunition and casings; bullets/projectiles;

- papers or receipts indicating ownership of firearms or transfer/sale/purchase of firearms;

- firearms indicia including cases, boxes, magazines, holsters, and cleaning equipment;

- identifications, mail, or other papers indicating occupancy of the residence; and

- cell phones.

(Hr'g Ex. 1.)

Officer Lockhorst provided the following facts supporting the issuance of the September 22nd warrant in his affidavit:

> In April of 2021, your affiant learned a male identified as Terrell Demetrious MALONE (03/15/1997) had an outstanding felony arrest warrant from the Minnesota Department of Corrections for a release violation (Warrant Number 21OPHF188, Issued 03/19/2021) with an original offense of Aggravated Robbery.
>
> Your affiant is familiar with MALONE, also known as "Meaty" or "Meaty Loe" and knows him to be associated with several "West" aligned criminal street gangs in Saint Paul. Your affiant has observed MALONE in recent music videos featuring local artists. The content of these music videos has

been explicitly gang-related and inflammatory in nature. In at least one of these music videos, your affiant observed MALONE in possession of a handgun. It should be noted MALONE is ineligible to possess firearms due to convictions for 2nd Degree Assault (Adjudicated Delinquent 2013) and 1st Degree Aggravated Robbery (2017). MALONE also has two prior convictions for Possession of a Firearm by an Ineligible Person (2015 and 2017).

It should be noted MALONE has a history of fleeing from police in vehicles and on foot.

On July 21, 2021, Saint Paul Police Eastern District officers were sent to [XXX] Magnolia Avenue East on a domestic disturbance (CN: 21-149690). The complainant advised her daughter was fighting with her boyfriend and she was pulled into his car against her will. The complainant stated the boyfriend then drove away in a vehicle with her daughter still in the vehicle. Officers were able to identify the suspect in this incident as MALONE. The complainant provided a cell phone number for MALONE of 651-336-5320 in hopes officers could use this to locate her daughter. Shortly thereafter, the daughter arrived back at the address and officers noted she was breathing heavily. Officers attempted to speak to the daughter, but she said she was fine and walked back into the house without speaking to the officers further. Officers checked the area for MALONE, but were unable to locate him.

Your affiant researched this phone number through other law enforcement sources and confirmed this phone number to be used by MALONE. On July 23, 2021, your affiant drafted a search warrant for real-time global positioning system information ("pings") for this phone number. This search warrant was reviewed and signed by the Honorable Judge Nicole Starr.

Since this time, your affiant has conducted electronic surveillance of MALONE. During this time period, your affiant has observed MALONE in a gray 2011 Hyundai Sonata bearing MN license plates EMY667 on two occasions.

Cell phone data has indicated that MALONE has spent most nights in the Uptown neighborhood of Minneapolis.

On September 19, 2021, at 1202 hours, Saint Paul Police Department Eastern District officers were sent to [XXX] Cook Avenue East on a domestic assault (CN: 21-196253). Officers met with the victim, who stated

she had argued with the father of her child, identified as MALONE, over a child custody issue. The argument became heated and the victim's boyfriend tried to keep them apart. MALONE pulled out a handgun and fired it once into a hallway of the home. Officers located a spent casing from the firearm and an apparent bullet hole in the hallway of the residence. MALONE then fled in an unknown vehicle. The victim stated MALONE stays with random friends or with his mother in Minneapolis. A Probable Cause Pickup and Hold was issued for MALONE in relation to this incident for Aggravated Assault, Possession of Firearm by Ineligible Person, and Terroristic Threats.

On September 20, 2021, ATF personnel located the gray 2011 Hyundai Sonata (MN: EMY667) parked in the area of Fremont Avenue South and 32nd Street West. ATF personnel performed physical surveillance of the vehicle and observed MALONE walk from the building at [XXXX] West 32nd Street to the vehicle, get into the driver's seat, and depart from the area in the vehicle.

Your affiant received information from the Minnesota Department of Corrections that MALONE had listed his mother, [A.J.] (11/15/1977), as an emergency contact while in their custody. Your affiant received information from Hennepin County that a recent civil court filing for eviction was located (Court File Number 27-CV-HC-21-763) involving [A.J.] and [G.P.] at [XXXX] West 32nd Street, Apartment [XXX]. In a Minneapolis Police call for service in August of 2020 (MPD CN: 20-222649), [G.P.], who was listed as [A.J.'s] boyfriend, reported MALONE had threatened to kill him.

Based upon the above information, your affiant believes MALONE resides at [XXXX] West 32nd Street, Apartment [XXX] with his mother. Your affiant believes the residence contains evidence connecting MALONE to the domestic shots fired incident on September 19, 2021, including firearms, firearms indicia, and cell phones. Your affiant knows from experience people often communicate via cell phone messages about past events, and your affiant has received information MALONE may be threatening the victims from the above incident via phone messages.

Your affiant requests a search warrant for [XXXX] West 32nd Street, Apartment [XXX], Minneapolis, MN to affect the arrest of Terrell Demetrious MALONE (03/15/1997) and to search for: firearms, including but not limited to handguns and long guns, shotguns, rifles, revolvers; ammunition and casings, bullets/projectiles; papers or receipts indicating ownership of firearms or transfer/sale/purchase of firearms; firearms indicia

> including cases, boxes, magazines, holsters, and cleaning equipment;
> identifications, mail, or other papers indicating occupancy of the residence;
> and cell phones.

(Hr'g Ex. 1.) The search warrant issued and was executed on September 22, 2021. (*Id.*)

No firearm was found inside the residence and no property was taken into custody. (*Id.*;

Hr'g Ex. 2.)

On September 24, 2021, Officer Lockhorst obtained a second search warrant to

search the following described property: "2011 Hyundai Sonata, gray in color, MN

license plates EMV667 (VIN: SNPEB4AC1BH108990), located at the Saint Paul Police

Department Impound Lot, 830 Barge Channel Road." (Hr'g Ex. 2.) The warrant allowed

for a search for the same property and things listed in the September 22, 2021 warrant.

(*Id.*) To support probable cause for the issuance of this warrant, Officer Lockhorst

restated the facts in his application from the preceding September 22, 2021 warrant and

added these other facts:

> On September 22, 2021, your affiant drafted a search warrant for [XXXX]
> West 32nd Street, Apartment [XXX], Minneapolis. This search warrant was
> reviewed and signed by the Honorable Hennepin County Judge Luis
> Bartolomei.

> On September 24, 2021, SPPD Gang Unit personnel, assisted by ATF
> personnel conducted a detail at [XXXX] West 32nd Street. At
> approximately 0810 hours, MALONE was observed by surveillance
> officers arriving on the west side of the apartment building in the 2011
> Hyundai Sonata (MN: EMY667). MALONE exited the vehicle and entered
> the back door of the apartment building. Shortly thereafter, members of the
> Hennepin County Sheriff's Office SWAT team entered the back door of the
> building and went to Apartment [XXX] to execute the search warrant and
> make the building safe. Deputies did not locate MALONE inside the
> apartment, but searched the common areas of the building and located
> MALONE hiding in the upstairs hallway. MALONE was arrested without
> incident.

5

SPPD and ATF personnel searched Apartment [XXX] for evidence and did not recover evidence from the apartment. Mail for MALONE and his mother was photographed inside the apartment.

The Hyundai Sonata was towed from the street to the SPPD Impound Lot, 830 Barge Channel road in relation to this investigation. The vehicle remains in the Impound Lot in a secure location.

MALONE was booked at the Ramsey County Jail for his outstanding warrants.

Based upon the above information, your affiant believes MALONE routinely drives the gray 2011 Hyundai Sonata (MN: 667EMY). Your affiant believes the vehicle contains evidence connecting MALONE to the domestic shots fired incident on September 19, 2021, including firearms, firearms indicia, and cell phones. Your affiant knows from experience people often communicate via cell phone messages about past events, and your affiant has received information MALONE may be threatening the victims from the above incident via phone messages.

Your affiant requests a search warrant for 2011 Hyundai Sonata, gray in color, MN license plates EMY667 (VIN: SNPEB4AC1BH108990), located at the Saint Paul Police Department Impound Lot, 830 Barge Channel Road to search for: firearms, including but not limited to handguns and long guns, shotguns, rifles, revolvers; ammunition and casings, bullets/projectiles; papers or receipts indicating ownership of firearms or transfer/sale/purchase of firearms; firearms indicia including cases, boxes, magazines, holsters, and cleaning equipment; identifications, mail, or other papers indicating occupancy of the vehicle; and cell phones.

(Hr'g Ex. 2.) The search warrant issued and was executed on September 24, 2021. (*Id.*) A

Springfield Armory 9mm handgun was found inside the vehicle and taken into custody.

(*Id.*)

On September 27, 2021, Officer Lockhorst obtained a third search warrant to

search the following described property: "Black Apple iPhone in black case (unknown

IMEI #)." (Hr'g Ex. 3.) The warrant allowed for a search of the following property and

things: text/audio messages; call logs; contacts; images and videos; web browser history;

and deleted data. (Hr'g. Ex. 3.) The facts that Officer Lockhorst stated in his affidavit in

support of the issuance of the third warrant included the facts from the two preceding

warrants from September 22 and September 24 along with the following additional facts:

> Your affiant drafted a search warrant for the 2011 Hyundai Sonata (MN:
> EMY667). The search warrant was reviewed and signed by the Honorable
> Judge George Stephenson. The search warrant was executed on the vehicle
> and a loaded Springfield Armory 9mm handgun was located inside the
> vehicle.
>
> Your affiant is requesting authorization to search the black Apple iPhone in
> a black case (unknown IMEI#) located at the Saint Paul Police
> Headquarters (367 Grove Street, Saint Paul, Ramsey County, MN 55101)
> for stored electronic data within the seized cellular phone or SIM card to
> include:
>     - Text messages/audio messages (Suspects often use messaging to
> facilitate transactions of illegal firearms and to discuss firearms and
> firearms related crimes)
>     - Call logs (The information contained in call logs tends to show
> links between known suspects and assist in identifying additional suspects)
>     - Contacts (Contact lists may help investigators identify sources of
> illegally purchased firearms)
>     - Images/videos (Suspects tend to keep photos/videos firearms in
> their phone)
>     - Web browser history (Suspects' browser history can assist
> investigators in identifying suspects, locations, vehicles, firearm
> information and other information connecting them to firearms related
> crimes)
>     - Deleted data (Any of the above information can be deleted. The
> retrieval of deleted data may provide investigators with additional
> investigative leads)
>
> Your affiant requests authorization to search all data within the cell phone,
> as it is unknown what date and time MALONE may have obtained the cell
> phone and it is also unknown what date and time MALONE may have
> obtained the aforementioned firearm and how long it was in his possession.

(Hr'g. Ex. 3.) The search warrant issued and was executed on September 27, 2021. (*Id.*)

"Digital phone data" from the phone was then taken into custody. (*Id.*)

On October 12, 2021, Defendant Terrell Demetrious Malone, Jr. was indicted on one count of felon in possession of a firearm. (Doc. No. 7, Indictment.)

## DISCUSSION

Defendant has filed a motion to suppress and exclude any evidence collected from the execution of the three warrants referenced above. Defendant argues there is no nexus connecting the subjects of the three warrants (the apartment, the vehicle, and the phone) to the allegation that Defendant possessed a firearm and that therefore the Government failed to offer evidence in its affidavits that would show a fair probability that the apartment, vehicle, or phone would contain evidence of an illegal firearm.

### I.    Probable Cause: Four-Corners Review

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (quotations omitted). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exist[s].'" *United States v. Oropesa*, 316 F.3d 762, 767 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

**A. The September 22nd search warrant for the West 32nd Street apartment**

As stated above, Defendant argues that there was no nexus connecting the allegation that he possessed a firearm to the West 32nd Street apartment. (Doc. No. 40, Mem. in Supp. of Mot. to Supp. ("Def.'s Mem.") 5.) The September 22nd search warrant application for the West 32nd Street apartment, however, included information linking Defendant to the criminal activity—illegal possession of a firearm—and linking both Defendant and his possession of a firearm to the West 32nd Street apartment. This information included information regarding Defendant's illegal possession of a gun (statements from witnesses who had observed Defendant firing a handgun, that Defendant had a felony warrant issued for his arrest and that it was therefore illegal for

him to possess firearms, that a music video featuring Defendant showed Defendant with a handgun, and that police had recovered evidence of a bullet casing and bullet hole from the scene of where Defendant had allegedly fired his handgun).

It also included information linking Defendant to the West 32nd Street apartment. Defendant listed his mother as an emergency contact, whose address was listed as [XXXX] West 32nd Street, Apartment [XXX]. In addition, the victim in the September 19, 2021 domestic assault incident stated that Defendant stayed with "random friends or *with his mother*." (Hr'g Ex. 1) (emphasis added). Defendant also allegedly threatened his mother's boyfriend in a call for service to the West 32nd Street address. Cell phone data further suggested that Defendant spent most nights in the Uptown neighborhood. And on September 20, 2021, two days before the search warrant was signed, ATF personnel located the gray 2011 Hyundai Sonata parked near the apartment where they observed Defendant walk from the building at [XXXX] West 32nd Street to the 2011 Hyundai Sonata and drive away.

Contrary to Defendant's argument, these facts taken together indicate a fair probability that evidence of Defendant's illegal possession of a firearm would be found in the West 32nd Street apartment. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Because probable cause deals with probabilities and depends on the totality of the circumstances, . . . it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (quotations and citation omitted). Moreover, where a warrant affidavit establishes probable cause that a defendant

possessed firearms illegally, as this Court concludes it does here, probable cause exists to search what is known to be the defendant's residence because "people generally keep [firearms] at home or on their persons." *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011) (quotations omitted); *United States v. Keele*, 589 F.3d 940, 943–44 (8th Cir. 2009) (holding that an agent's affidavit explaining their experience with how people use their residences for illicit behavior was sufficient for a nexus after knowing that Defendant was engaged in some illegal activity); *see also United States v. Nelson*, No. 20-cr-242 (SRN/BRT), 2021 WL 5772342, at *4 (D. Minn. Aug. 11, 2021) (stating that probable cause existed to search the defendant's residence where the warrant affidavit established probable cause that the defendant possessed firearms illegally); *United States v. Huntington*, No. 20-cr-145 (ECT/BRT), 2021 WL 165112, at *2 (D. Minn. Jan. 19, 2021) ("Thus, when the government has shown probable cause that a defendant illegally possessed a firearm, that showing naturally extends to his residence.") (citing *Cowling*, 648 F.3d at 696); *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) ("It was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence . . . even though the affidavit contained no facts that the weapons were located in the defendant's trailer . . . .").

For these reasons, this Court concludes that the information presented in the affidavit about the West 32nd Street apartment indicated a fair probability that evidence of Defendant's illegal possession of a firearm would be found in the apartment. Therefore, this Court concludes that the September 22nd supporting affidavit for the

search of the [XXXX] West 32nd Street, Apartment [XXX] residence provided a proper nexus and sufficient probable cause for the search.

**B. The September 24th search warrant for the 2011 Hyundai Sonata**

Defendant also argues that there was no nexus connecting his alleged firearm possession to the 2011 Hyundai Sonata. This Court disagrees. The September 24th application for the 2011 Hyundai Sonata included information linking both Defendant and his possession of a firearm to the 2011 Hyundai Sonata. This information included that Officer Lockhorst had observed Defendant driving the 2011 Hyundai Sonata twice before the shooting, Defendant had left in a vehicle after the shooting, that ATF personnel had observed Defendant on September 20 and 24, 2021, inside the 2011 Hyundai Sonata near the West 32nd Street apartment (Defendant's suspected residence where Defendant's mail was found), and the firearm was not located inside the West 32nd Street apartment after the police had made their search on September 24, 2021.

"[L]aw enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant." *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). In *United States v. Howard*, a case analogous to the facts here, police obtained a search warrant for a defendant's suspected apartment based on information that the defendant (a convicted felon) was trafficking drugs and had been seen with a handgun. No. 07-cr-425 (JRT/FLN), 2008 WL 941840, at *3 (D. Minn. Apr. 4, 2008). Inside the apartment they discovered narcotics, cash, cell phones, ammunition, and documents in the defendant's name. *Id.* But no firearm was located. *Id.* Police applied for and received a second warrant for a second residence and Defendant's person. *Id.* at *4. In the second

warrant application, police restated the facts from the first warrant and added that they had observed the defendant enter the second residence, they had found ammunition but no firearm at the apartment they had searched, and the execution of the first warrant confirmed that Defendant resided at the apartment. *Id.* In upholding the second warrant regarding the Defendant's person, the Court in *Thomas* concluded the following: "The search of the [first apartment] revealed that the Defendant, a convicted felon, possessed a substantial amount of ammunition, but no firearm was found at the residence. This provided probable cause to believe that the Defendant may have a firearm on his person." *Id.* at *5.

Here, like in *Howard*, by failing to discover the firearm at the residence after the first search, it was reasonable for officers to believe that the firearm might be located somewhere else, such as inside Defendant's vehicle. Defendant had recently parked the 2011 Hyundai Sonata next to the 32nd West Street apartment, where Defendant was discovered without the gun. Defendant was known to carry a gun. The gun was not found inside the apartment, where mail with Defendant's name confirmed Defendant resided. This was enough to infer the gun might be located in the next most likely location where Defendant had just been seen: the 2011 Hyundai Sonata.

In addition, it was reasonable to infer that the 2011 Hyundai Sonata was the same vehicle Defendant had left in after the shooting and thus had a connection to his illegal gun possession. Defendant had left the shooting scene on September 19 driving an unknown vehicle only to be observed the very next day, September 20, and several days later on September 24, driving the 2011 Hyundai Sonata. Officer Lockhorst had also

observed Defendant driving the 2011 Hyundai Sonata on two occasions in the months leading up to the shooting. This information allowed officers to make a reasonable inference much like the officers in *Thompson* where the Eighth Circuit concluded that officers, knowing a "white 1992 Dodge minivan" was linked to a crime and knowing Defendant, connected with that crime, was seen parking a "white minivan," could reasonably infer that "these two vehicles were one and the same." *Thompson*, 210 F.3d at 860. Here, officers could reasonably infer the two vehicles (the 2011 Hyundai Sonata and the unknown vehicle) were the same based on the proximity of time that Defendant had driven both. Thus, contrary to Defendant's argument that there existed no nexus connecting his alleged firearm possession to the 2011 Hyundai Sonata because witnesses did not observe what vehicle Defendant had driven the day of the shooting, based on the officer's observations both before and the day of the search of the apartment, one could infer that evidence of the shooting would be found in the 2011 Hyundai Sonata.

For these reasons, this Court concludes that the information presented in the affidavit supporting the search of the 2011 Hyundai Sonata indicated a fair probability that evidence of Defendant's illegal possession of a firearm would be found in that vehicle. Therefore, this Court concludes that the September 24th supporting affidavit for the search of the 2011 Hyundai Sonata provides a proper nexus and sufficient probable cause for the search and seizure.

### C. The September 27th search warrant for Defendant's cellphone

Defendant also argues that no fair probability existed that evidence of the firearm possession would be found on his cellphone. Contrary to Defendant's argument,

however, the September 27th application for the "Black Apple iPhone in black case (unknown IMEI #)" included information linking both Defendant and his possession of a firearm to the phone. That information included that Officer Lockhorst had received information that Defendant may be threatening multiple people, including victims from the shooting incident, via phone messages. In addition, Officer Lockhorst also provided several bases for searching the phone:

- suspects often use messaging to facilitate transactions of illegal firearms and to discuss firearms and firearms related crimes;

- the information contained in call logs tends to show links between known suspects and assist in identifying additional suspects;

- contact lists may help investigators identify sources of illegally purchased firearms;

- suspects tend to keep photos/videos firearms in their phone; and

- suspects' browser history can assist investigators in identifying suspects, locations, vehicles, firearm information and other information connecting them to firearms related crimes.

(Hr'g Ex. 3.)

The warrant application provided a fair probability that evidence of Defendant's illegal gun possession would be found on the cellphone. The cellphone was used just prior to the shooting incident to send threatening messages to the victims. In addition, "given the modern ubiquity of cell phones as the primary means of communication for most people" and Officer Lockhort's multiple bases indicating why evidence of the crime would be found on Defendant's cellphone, it was not unreasonable for a judicial officer to infer that the cellphone was being used in connection with Defendant's illegal

possession of a firearm. *See United States v. Eggerson*, No. 0:18-cr-110 (DWF/KMM), 2018 WL 6520648, at *4 (D. Minn. Sept. 27, 2018), *report and recommendation adopted*, 2018 WL 5962481 (D. Minn. Nov. 14, 2018) (concluding that, "given the modern ubiquity of cell phones as the primary means of communication for most people, it was not unreasonable for [the judicial officer] to infer that cell phones were being used in connection with the alleged drug dealing described" by the investigator).

For these reasons, this Court concludes that the information presented in the affidavit supporting the search of Defendant's cellphone indicated a fair probability that evidence of Defendant's illegal possession of a firearm would be found in the phone. Therefore, this Court concludes that the September 27th supporting affidavit for the search of the "Black Apple iPhone in black case (unknown IMEI #)" provided a proper nexus and sufficient probable cause for the search.

## II.    *Leon* **Exception**

Finally, even if probable cause did not exist, the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the

objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). The Court in *Leon* cited four circumstances in which the good-faith exception does not apply:

> (1) when there is a *Franks* violation; (2) when an issuing judge has "wholly abandoned his judicial role"; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quoting *Leon* 468 U.S. at 923).

Here, Defendant does not request a *Franks* hearing[1] and the other three circumstances highlighted by *Puckett* do not apply. *See id.* Instead, without citing any

---

[1]    Defendant argues in footnote two of his supporting memorandum that "the search warrant affidavit contains information offered by the police that was knowingly or recklessly false." (Def.'s Mem. n.2.) Defendant requests that the Court "reconsider admitting Def. Ex 1 if the court believes that the good faith exception otherwise applies." (*Id.*) Defendant appears to be arguing that there is a *Franks* violation without first seeking a *Franks* hearing. *See generally Franks v. Delaware*, 438 U.S. 154 (1978).

This Court previously addressed this issue at the January 13, 2022 motions hearing. (*See* Doc. No. 39 at 5.) There, Defendant's counsel sought to introduce into evidence Defendant's Exhibit 1 (a St. Paul Police "Incident Report" regarding the September 19, 2021 shooting). (*Id.*) The Government objected to the admission of the exhibit for purposes of a four-corners review. (*Id.*) The Court sustained the Government's objection. (*Id.*) However, based on the positions of the parties, the Court inquired whether Defendant would like the opportunity to consider moving to request an evidentiary hearing pursuant to *Franks*. (*Id.*) The Government did not disagree that Defendant could potentially include a motion for a *Franks* hearing in his briefing. In its Order on January 14, 2022, the Court stated that "if Defendant chooses to pursue a

caselaw, Defendant makes two arguments why the good-faith exception cannot be applied. First, he argues that the "search warrant affidavit merely listed reasons why the police thought [Defendant] was a bad guy instead of articulating why the areas requested to be searched would contain evidence of the firearm possession allegation." (Def.'s Mem. 6.) But as discussed above, all three warrants stated relevant information and bases indicating a fair probability why an illegal firearm would be found in the apartment and

---

*Franks* hearing, Defendant is not precluded from including [Def. Ex. 1] as part of his showing that a *Franks* hearing is warranted pursuant to the applicable law." (*Id.* at n. 1.)

But Defendant did not request a *Franks* hearing. Even if Defendant's second footnote could be construed as such, the request is denied. "To warrant a hearing on the affidavit's veracity, the defendant must make 'a substantial showing that the affidavit contains intentional or reckless false statements and [that] the affidavit, [if] purged of its falsities, would not be sufficient to support a finding of probable cause.'" *United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999) (alterations in original) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997), and citing *Franks*, 438 U.S. at 155–56). The substantial showing required for a *Franks* hearing "is not easily made." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008). "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quotations omitted). Here, asking to simply reconsider the admission of Defendant's Exhibit 1 fails to satisfy Defendant's burden to warrant a *Franks* hearing. And because Defendant did not present the exhibit in connection with an appropriate *Franks* hearing request, there is no basis to reconsider the Court's decision to exclude the exhibit from this Court's four-corners review. However, Defendant's Exhibit 1 will not be stricken from the record for purposes of any objection to this Court's Report and Recommendation.

Finally, this Court observes that the "Incident Report" in Defendant's Exhibit 1 does not establish that the September 22nd search warrant affidavit contained information offered by the police that was knowingly or recklessly false. The victim's uncertainty about Defendant's whereabouts does not undermine the veracity of the other information, including the victim's statement that Defendant stays with random friends or with his mother in Minneapolis, the ATF agents' observation of Defendant exiting his mother's apartment building, and the cell phone data indicating that Defendant spent most nights in the Uptown neighborhood of Minneapolis.

the vehicle, and why evidence of criminal activity would be found via a search of Defendant's cellphone. This includes the information Defendant complains made him look like a "bad guy": Defendant's appearance in a music video with a handgun supported the officer's suspicions of his illegal possession of a firearm; the domestic disturbance from July 21, 2021 provided explanation for police's surveillance activity of his vehicle prior to the shooting; and the call for service to the West 32nd Street apartment concerning Defendant's alleged threat to his mother's boyfriend supported the suspicion that Defendant possibly resided there.

Second, Defendant argues that the good-faith exception cannot be applied because the "affidavit claimed that [Defendant] was seen in the Hyundai twice." (Def.'s Mem. 6.) Setting aside that even just two sightings would be enough to show the officers' reliance was objectively reasonable, the affidavit includes four total sightings: two by Officer Lockhorst while he was conducting electronic surveillance on Defendant before the shooting, and two by ATF personnel several days after the shooting. In addition, the Eighth Circuit has concluded that the good-faith exception applies where an issuing judge could have logically inferred that evidence of the crime would be found in the search location. *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021) ("Here, the good-faith exception similarly applies because the issuing judge could have logically inferred that Mayweather stored contraband at his residence."). Such is the case here where, as reasoned above, it was reasonable to infer based on the officers' observations and other information that evidence of Defendant's illegal possession of a firearm would be found in the vehicle.

Finally, based on this Court's review, there is no evidence to suggest that the officers' reliance on the warrant was not in good faith, nor is there evidence that the officers' reliance was not objectively reasonable. Thus, this Court concludes that the good-faith exception would apply to the three search warrants.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's request to reconsider the Court's decision to exclude Defendant's Exhibit 1 from this Court's four-corners review (Doc. No. 40) be **DENIED**.

## RECOMMENDATION

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure. (Doc. No. 26) be **DENIED**.

Date:  March 14, 2022

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **March 28, 2022**. A party may respond to those objections by **April 11, 2022**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.